WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. CV 13-1316-TUC-CRP |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| $229,850.00 in U.S. Currency, | ) ) | |
| Defendant. | ) ) | |
| Robert and Debra Osborne, | ) ) | |
| Claimants. | ) ) | |
| | ) | |

     The Government filed this forfeiture action pursuant to 21 U.S.C. §881(a)(6). (Complaint (Doc. 1)).   The Claimants in this case, Dr. Robert Osborne and his wife Debra Osborne seek dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, arguing that the Complaint is untimely.  (Doc. 9). The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c). The Osbornes' Motion to Dismiss came on for oral argument on July 29, 2014. (*See* Transcript (Doc. 26)).  For the following reasons, the Court converts the Motion to Dismiss to a motion for summary judgment and denies the motion.

**BACKGROUND**

     On May 9, 2013, pursuant to the execution of a search warrant by DEA, FBI, HHS, and IRS, a total of $229,850.00 in cash was seized from the master bedroom area of the

1   Osbornes' residence. (Complaint, ¶11).   The government alleges that the cash represents
2   proceeds from Dr. Osborne's practice that was operating in violation of the Controlled
3   Substances Act, 21 U.S.C. §§ 846 and 841 and is subject to forfeiture pursuant to 21 U.S.C.
4   §881(a)(6).   (*Id.* at ¶¶13, 15).   Neither Dr. Osborne nor his wife, who both reside at the
5   residence, were arrested or incarcerated.  (*Id.* at ¶14).

6   **DISCUSSION**

7          The Osbornes seek dismissal of this action on the ground that the Complaint is
8   untimely filed by one day.  The parties disagree about when the time for the government to
9   file this action began to run: the Osbornes contend it should be when the Claim was received
10  by the FBI mailroom in Phoenix, Arizona, on July 10, 2013, and the government contends
11  it is when the claim was received by the appropriate official at the agency, here, the FBI
12  Forfeiture Paralegal Specialist at the FBI field office in Phoenix, Arizona, who received the
13  Claim on July 11, 2013.

14  **STANDARD.**   The government has attached affidavits with internal exhibits to its Response
15  to the Motion to Dismiss.  To consider the government's attachments, the Court must treat
16  the motion to dismiss as a motion for summary judgment under Rule 56 and provide the
17  parties with "a reasonable opportunity to present all the material that is pertinent to the
18  motion." Fed.R.Civ.P. 12(d); *see also  San Pedro Hotel Co., Inc. v. City of Los Angeles,* 159
19  F.3d 470, 477 (9th Cir. 1998) (represented party who submits matters outside the pleadings
20  and invites consideration of same has sufficient notice that the court may use them to decide
21  the motion thus requiring conversion to a motion for summary judgment).  At oral argument,
22  when the Court addressed the issue of conversion to a motion for summary judgment in light
23  of the government's attachments, counsel for the Osbornes stated that: "It is undisputed
24  that...the agency [received the claim]...on the 10th.  My argument is that's the effective date.
25  I am, at this point, not challenging that someone in that agency really did stamp it on the 11th;
26  I mean that seems to be what these affidavits are saying.  My position is, so what[?]  It
27  doesn't matter...." (Tr. at p.12).  Counsel went on to state that discovery about "how the FBI
28  procedures work...." is not necessary for the legal issue presently before the Court unless the

1  Court decides otherwise.  (*Id.*).

2      Summary judgment is appropriate when there is no genuine issue as to any material

3  fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).  The party

4  seeking summary judgment "bears the initial responsibility of informing the district court of

5  the basis for its motion, and identifying those portions of [the record]...which it believes

6  demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.* Catrett, 477

7  U.S. 317, 323 (1986).  The nonmoving party's evidence is presumed true and all inferences

8  are to be drawn in the light most favorable to that party.  *Eisenberg v. Ins. Co. of North*

9  *America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

10      Only disputes over facts that might affect the outcome of the suit will preclude the

11  entry of summary judgment, and the disputed evidence must be "such that a reasonable jury

12  could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

13  242, 248 (1986).  If the burden of persuasion at trial would be on the nonmoving party, the

14  movant may carry its initial burden of production under Rule 56(c) by producing, "evidence

15  negating an essential element of the nonmoving party's claim or defense," or by showing,

16  after suitable discovery, that the "nonmoving party does not have enough evidence of an

17  essential element of its claim or defense to carry its ultimate burden of persuasion at trial."

18  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105-1106 (9th Cir. 2000).

19  **TIMELINESS.**  The applicable forfeiture statute provides, in pertinent part that:

20      Any person claiming property seized in a nonjudicial civil forfeiture
    proceeding under a civil forfeiture statute may file a claim with *the*
21      *appropriate official* after the seizure.

22  18 U.S.C. §983(a)(2)(A) (emphasis added).  "Not later than 90 days after a claim has been

23  filed, the Government shall file a complaint for forfeiture...." 18 U.S.C. § 983(a)(3)(A).  If

24  the government does not timely file a complaint for forfeiture or return the property prior to

25  expiration of the 90-day deadline, then the government "shall promptly release the

26  property...and may not take any further action to effect the civil forfeiture of such

27  property...."  18 U.S.C. §983(a)(3)(B).

28      The facts are not in dispute.  On May 9, 2013, the government seized the Defendant

currency.   On June 18, 2013, FBI Headquarters mailed Notice Letters to each of the Osbornes informing that the forfeiture was conducted pursuant to 21 U.S.C. §881, 19 U.S.C. §1602-1619, 18 U.S.C. §983, and 28 C.F.R. Part 8.  (Response (Doc. 16), Exh. 1A).   The Notice Letters also informed that:

> If you want to contest the seizure or forfeiture of the property in court, you must file a claim of ownership with the FBI by July 23, 2013.  *The claim is filed when it is received by the FBI Forfeiture Paralegal Specialist of the FBI Field Division mentioned below.*[1]

(*Id.*) (emphasis added).  Through counsel, the Osbornes  submitted a Claim dated July 9, 2013.  (Response, Exh. 2A).  The Osbornes sent the Claim  by certified mail on July 9, 2014.  (*Id.*)    In their Answer and Motion to Dismiss, the Osbornes  assert that the Claim was received by the FBI on July 10, 2013.  (Answer, (Doc. 7) p. 3[2] (citing tracking number); Motion p. 1 (citing Answer)).  The government does not dispute that the Claim arrived at the FBI mailroom on July 10, 2013. (*See* Response (Doc. 16), p. 1 (indicating the FBI mailroom in Phoenix, Arizona, received the Claim on July 10, 2013 according to the U.S. Postal service tracking number indicated in the Answer)).  Rather, the government contends that the Claim was not  received by the "appropriate official" (*i.e.* the FBI Forfeiture Paralegal Specialist) until July 11, 2013.  Thus, the government contends it had 90 days from that date to file the Complaint.

The Claim bears a "received" date of 7/11/13 (the date appears to be hand written).

---

[1]The Osbornes were directed to
Submit all documents to this FBI Field Division:
SPECIAL AGENT IN CHARGE
FEDERAL BUREAU OF INVESTIGATION
21711 N. 7TH STREET
PHOENIX, AZ 85024
ATTN: FORFEITURE PARALEGAL SPECIALIST
TELEPHONE NUMBER: 623-466-1819
(Response, Exh. 1A).

[2]The Answer states the Claim was received by the FBI on "July 10, 2014."  (Answer, p.3).  Based on parties' statements and the evidence of record, the Court presumes the date reflected in the Answer is a typographical error.

1   (Response, Exh. 2A).  The government submitted the Declaration of FSA Data Analyst

2   Brianne Johnson who states that she: stamped and dated the Osbornes' Claim on July 11,

3   2013; the day she stamped the Osbornes' claim, she was undergoing training by FBI

4   Forfeiture Paralegal Specialist Christa Roberts who trained her to immediately open and date

5   stamp incoming claims and petitions, then give them to either Roberts or the other Forfeiture

6   Paralegal Specialist; and standard procedure is to date stamp the claims on the day they are

7   received from the mailroom.   (Response, Exh. 2).  The government also submits the

8   declaration of Christa Roberts, FBI Forfeiture Paralegal Specialist, who confirms Johnson's

9   statements regarding receipt of the Osbornes' Claim and dating it as received on July 11,

10   2013. (Response, Exh. 1).  Roberts goes on to state that the FBI office has a large mailroom,

11   staffed by two employees, that receives mail for distribution to FBI offices in cities

12   throughout Arizona. (*Id.*).  She states that "[t]here is always a delay from receipt of mail in

13   the mailroom to delivery into the forfeiture mailbox, due to required security measures and

14   sorting procedures for incoming mail.... It is not unusual for mail to be placed in the

15   forfeiture mailbox late in the afternoon, or the following morning.  As a result, often the

16   Forfeiture Unit has a receipt date the day after mail was received from the mailroom." (*Id.*

17   at ¶7).  "Upon receipt from the mailroom, the Forfeiture Unit immediately opens and date

18   stamps all incoming claims and petitions." (*Id.* at ¶6).

19        On October 9, 2013 (91 days after July 10, 2013 and 90 days after July 11, 2013), the

20   government filed the civil complaint in this action.  The Osbornes assert that the complaint

21   is untimely filed pursuant to 18 U.S.C. § 983(a)(3)(A) because this civil action was filed later

22   than 90 days after they filed their Claim given that their Claim was received by the FBI

23   mailroom on July 10, 2013.  The government counters that §983(a)(2)(A) requires that the

24   claim be filed with the "appropriate official" and, therefore, the claim is not "filed" until

25   received by that official, who in this case is the FBI Forfeiture Paralegal Specialist.  The

26   government also cites regulations indicating that with respect to a personal written notice of

27   administrative forfeiture, such as that received by the Osbornes, "Appropriate official"

28   means: "the office or official identified in the...personal written notice in accordance with [28

- 5 -

C.F.R.] §8.9." 28 C.F.R. § 8.2.  Pursuant to §8.9, the notice must: "State the identity of the appropriate official of the seizing agency and the address where the claim must be filed...." 28 C.F.R. §8.9(b)(2)(iv); *see also* 28 C.F.R. §8.10(a) (indicating the claimant must file a claim with the "appropriate official").  The government points out that the Notices sent to the Osbornes were clear that the "claim is filed when it is received by the FBI Forfeiture Paralegal of [sic] FBI Field Division...."   (Government's Supplemental Authority, Attachment 1 (Doc. 22-1),  p. 2 (citing Response, Exh. 1)).   According to the government, the claim was received by the "appropriate official" (*i.e.,* the FBI Forfeiture Paralegal Specialist)  on July 11, 2013 and thus, the government had 90 days from that date to file the complaint. (*Id.* at p. 2).  Alternatively, if the Court determines the Complaint is late, then the government requests equitable tolling.

In 2000, Congress enacted the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983, to provide increased protections for claimants. *United States v. Ritchie,* 342 F.3d 903, 910  n. 1 (9th Cir. 2003); *see also* Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties,* 27 J.Legis. 97, 122-25 (2001) ("Cassella").  "The enactment of CAFRA was, in part, a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government. The logic was that if property owners were required to file claims within a fixed period of time, and were made to suffer consequences for failing to do so, the government should face deadlines and suffer consequences as well."  Cassella, at pp. 122-25.  CAFRA imposed the 90-day deadline for the government to file a complaint set out at 18 U.S.C. §983(a)(3)(A).  The 90-day time limit is mandatory and "[t]he requirement that the Government release the seized property where it fails to file a timely complaint for forfeiture is the 'sanction' that CAFRA imposes for such failure."   *United States v. One 2007 Harley Davidson Street Glide Motorcycle,* 982 F.Supp.2d 634 (D.Md. 2013) (citing *United States v. Wilson,* 699 F.3d 789, 791 (4th Cir. 2012)).  Moreover, because forfeitures are disfavored, forfeiture laws are strictly construed

1    against the government.  *Ritchie,* 342 F.3d at 910.

2        The Osbornes argue that the government "ought not be able to manipulate the

3    deadlines to evade the delay reforms[]" enacted by CAFRA.  (Motion, p. 5).  The Court

4    agrees.

5        Not only must the government file a complaint no later than 90 days after receipt of

6    a claim, but a claimant must file a claim within a deadline as well. *See Beck v. United States,*

7    2011 WL 862952, *1 (D.Md. Mar. 10, 2011) ("The Government's notice sets the deadline

8    for filing a claim for seized property, subject to the restriction that the deadline may not be

9    'earlier than 35 days after the date the letter is mailed.'") (quoting 18 U.S.C. §983(a)(2)(B));

10   (*See also* Tr. at p. 15 (counsel for government confirming that Claimants had 35 days to file

11   a claim)).  Here, the Osbornes did as instructed, and mailed their Claim pursuant to the

12   directions they received from the government.[3]  Roberts' declaration makes clear that "[t]here

13   is always a delay from receipt of mail in the mailroom to delivery into the forfeiture

14   mailbox...."  (Response, Exh. 1, ¶7).  Yet, there is no objective means for a claimant to be

15   aware of and plan for such delay.   Nor did the notice letter inform the claimant to send the

16   claim so that it would be timely received by the paralegal accounting for a delay of any

17   specified or unspecified period.   In sum, "[t]he strict construction required of [section

18   983(a)(3)(A)]...is a two way street.  Had claimant...been merely one day late in filing his

19   claim, no doubt the government would take the position that the claim would be barred–and

20   properly so." *United States v. Funds in the Amount of $314,900.00 in U.S. Currency*, CV 05-

21   3012 (N.D. Ill. December 21, 2005 Order, p. 4)(citing *In re Forfeiture of $34,905.00 in U.S.*

22   *Currency,* 96 F.Supp.2d 1116, 1119 (D.Or. 2000) (DEA required to forfeit property where

23   claimant failed to file claim within statutory period)). At oral argument, counsel for the

24   _____

25       [3]Although the government relies on the regulation which identifies the "appropriate
     official" as being the person specified in the notice, the regulation also states that the notice
26   must specify the address where the claim should be sent.  28 C.F.R. §§8.2, 8.9(b)(2)(iv).
     Here, the Osbornes did as directed by mailing their Claim to the address listed in the notice.
27   That is all the regulation requires.  The regulation does not state that the claim is filed only
28   when placed in the hands of the appropriate official.

government confirmed that if a claim arrived at the mailroom on last day for filing a claim and did not reach the appropriate official until the following day, the claim would be deemed untimely.  (Tr. at pp. 15, 21).  Thus, "a requirement that filing occurs only when a claim reaches 'the appropriate official' would wrest from claimants all control over timely filing, as they could only hope that whatever mailroom procedures the agency has in place would get their claim to the right person by the deadline."  *Beck,* 2011 WL 862952 at *4.  The District Court for the Eastern District of Michigan, in holding that the claim is "filed" when received by the agency rather than a specific official, persuasively found the government's position to the contrary

> untenable because it would, as a practical matter, eviscerate the 90–day limitation period imposed on the Government. For example, as the Government acknowledged at oral argument, if a claim were received by the seizing agency, but then sat in the mailroom for two weeks before being delivered to the person handling the seizure, the 90–day period would be extended for two weeks. The same would be true if the person handling the seizure were out sick, on vacation, on maternity leave, etc.

*United States v. Funds from Fifth Third Bank Account,* 2013 WL 5914101, *7 (E.D. Mich. Nov. 4, 2013).  Therefore, the court concluded that "the better interpretation is that a claim is filed when it is actually received by the seizing agency."  *Id.* (citing *United States v. Real Property Located at 475 Martin Lane, Beverly Hills, CA.,* 545 F.3d 1134, 1141 (9th Cir. 1988) (when deciding that CAFRA authorized *ex parte* extensions of the 90-day deadline the court stated that "[i]f a claim is filed, the government then has ninety days from the date the claim was received by the seizing agency to file a civil complaint....")).[4]  Moreover, such a

---

[4]At oral argument counsel for the Osbornes explained:

[I]n the federal system, there are dozens and dozens of federal agencies in the forfeiture game.  I believe that what CAFRA intended when they said the "appropriate official," was basically send it to the right agency.  If DEA takes it, you can't send it to the Department of Justice.  If the FBI takes it, and they want the action to go through the Phoenix office, you can't send it to D.C. or Virginia or whatever....[T]hat makes sense, and that's consistent with CAFRA, that these actions start right away, and the Government has a deadline they have to comply with.

(Tr. at p. 5).

conclusion is in line with the protections that CAFRA sought to provide for claimants by imposing statutory deadlines applicable to civil forfeiture procedures:

> "[A]s a general rule, forfeitures are not favored by the law and statutes providing for forfeitures are strictly construed. Furthermore, the Court understands that the current statutory deadlines were meant to remedy the pre-CAFRA reality, in which statutory deadlines for the commencement of civil forfeiture proceedings were absent. "The enactment of CAFRA was, in part, a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government." *The purpose of the ninety-day time period in section 983, then, is to prevent the government from retaining property subject to forfeiture "for an extended period without commencing a* judicial action that will give the claimant his day in court."

*Funds from Fifth Third Bank Account,* 2013 WL 5914101 at *10 (quoting *United States v. $39,480.00 in U.S. Currency,* 190 F.Supp.2d 929, 931-32 (W.D. Tex. 2002) (quoting Cassella, p. 122)) (emphasis added).   Testimony before the House of Representatives regarding CAFRA indicated that: "if a person files a claim letter with the seizing agency, the U.S. Attorney would then have to file a civil forfeiture within 90 days of the receipt of the claim letter."  *Civil Asset Forfeiture Reform Act of 1997: Hearings on Bi-Partisan Bill to Provide a More Just and Uniform Procedure for Federal Civil Asset Forfeitures, before the Committee on the Judiciary, U.S. House of Representatives, H.R. 1835,* 105th Congress, 1st session (June 11, 1997)  (statement of David B. Smith, on behalf of National Association of Criminal Defense Lawyers), http://www.nacdl.org/Advocacy.aspx?id=14904, or alternatively at,  http://www.justice.gov/jmd/civil-asset-forfeiture-reform-act-2000-pl-106-185; *see also* Cassella, n. 247 (citing Smith's testimony).

A finding that the claim is filed when it is received by the mailroom of the agency where the claimant is directed to send the claim is consistent with the purpose of CAFRA. Such a holding creates a definite and firm deadline that is easily measurable and verifiable by all parties.  Should the government require an extension of the 90-day deadline due to delay in delivery from the agency's mailroom to the paralegal, then the government may request an extension upon a showing of good cause.  *See e.g.* 18 U.S.C. §983(a)(3)(A); *475 Martin Lane,* 545 F.3d at 1141.

1    Further, the government's authority cited to support a contrary finding is not binding
2 on this Court and is unpersuasive. Much of the authority cited by the government is
3 premised on a 1916 decision from the Supreme Court in *United States v. Lombardo,* 241
4 U.S. 73 (1916). The *Lombardo* Court addressed the issue whether the failure to file a
5 document with Commissioner General of Immigration in Washington, D.C., was justiciable
6 in the state where the document should have been mailed or could only be prosecuted in
7 Washington, D.C. The Court stated that "[f]iling...is not complete until the document is
8 delivered and received....A paper is filed when it is delivered to the proper official and by
9 him received and filed....Anything short of delivery would leave the filing a disputable fact,
10 and that would not be consistent with the spirit of the act[]...." *Lombardo,* 241 U.S. at 76
11 (internal quotation marks omitted). *Lombardo*'s rule has become known as the physical
12 delivery rule. *See Crump v. United States,* 282 B.R. 859, 862 (N.D. Ohio 2002).
13 Additionally, the Second Circuit, citing *Lombardo,* has held in the context of the filing a
14 claim between private parties for products damaged in shipping, that "a paper will not be
15 considered 'filed' until it has been delivered and received by the party with whom it is to be
16 filed." *Pathway Bellows, Inc, v. Blanchette,* 630 F.2d 900, 902 (2d. Cir. 1980). *United*
17 *States v. $7,696.00 in U.S. Currency,* 2013 WL 1827668, *4 (N.D. Iowa April 30, 2013) and
18 *United States v. One GMC Yukon Denali,* (CV 03-6890-JTL at Doc. 12, p. 9) (C.D. Cal. Dec.
19 4, 2003), cited by the government rely on *Lombardo* and *Pathway Bellows* to conclude that
20 the claim is filed when received by the Forfeiture Paralegal Specialist. However, this
21 language is taken out of context. *Lombardo* and *Pathway Bellows, Inc.,* decided whether the
22 place or date of mailing (*i.e.* the mailbox rule) was the triggering event, or whether receipt
23 (*i.e.* the physical delivery rule) was the triggering event for "filing" a document. *Lombardo*
24 and *Pathway Bellows* did not address the nuance presented here concerning whether the
25 document was filed when received at the designated official's address or when the document
26 actually reached that official's hands. Unlike the cases cited by the government, this Court
27 declines to extend *Lombardo* and *Pathway Bellows* to the instant facts. Consequently, the
28 Complaint in this action is untimely.

1    **EQUITABLE TOLLING.**  In the event the Court finds that the Complaint is untimely, the

2    government requests equitable tolling. (Response, pp. 4-5).  The government cites one case

3    applying the equitable tolling doctrine to §983(a)(3)(A), (*id.* (citing *$39,480.00 in U.S.*

4    *Currency,* 190 F.Supp. 2d at 932-33)), however, neither the government nor its cited

5    authority specifically discuss whether equitable tolling is available under §983(a)(3)(A) in

6    the first instance.  The Osbornes argue that substantive limitations are not subject to equitable

7    tolling.  (Reply (Doc. 20), p. 6) (citing *Dada v. Mukasey,* 554 U.S. 1, 18 (2008) (in

8    immigration context, substantive limitations are not subject to equitable tolling)).  The

9    Osbornes do not explain how §983(a)(3)(A) is a "substantive" limitation precluding equitable

10   tolling.

11          "[W]hen a time period for filing is not jurisdictional, the requirement is subject to

12   waiver, estoppel, and tolling." *Burns v. U.S.*, 764 F.2d 722, 727 n.3 (9th Cir. 1985) (citing

13   *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)) *cf. Holland v. Florida,* 560

14   U.S. 631, 645 (2010) (proceeding to determine whether equitable tolling was available under

15   statute only after first noting that statute at issue was not jurisdictional)). The first question,

16   then, is whether §983(a)(3)(A) is jurisdictional.  The Fourth and Second Circuits have held

17   that the provisions of §983 are is not jurisdictional.  *See United States v. Vasquez,* __ F.3d.

18   __, 2014 WL 3637150, *4 (2nd Cir. 2014) ("[T]he provisions of § 983 are procedural rules

19   for pursuing the forfeiture of seized assets, not conditions of subject matter jurisdiction.")

20   (inner quotation marks and citation omitted); *Wilson,* 699 F.3d at 797 ("we conclude that the

21   90-day deadline imposed in §983(a)(3) is not jurisdictional....")).  For the following reasons,

22   this Court agrees.

23          The Supreme Court has recently pointed out that

24          "the word 'jurisdiction' has been used by courts ... to convey 'many, too many,
             meanings' " and "cautioned ... against profligate use of the term." *Union Pac.*
25           *R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment,*
             *Cent. Region,* 558 U.S. 67, 130 S.Ct. 584, 596, 175 L.Ed.2d 428 (2009)
26           (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 90, 118 S.Ct.
             1003, 140 L.Ed.2d 210 (1998)). "Accordingly, the term 'jurisdictional'
27           properly applies only to 'prescriptions delineating the classes of cases
             (subject-matter jurisdiction) and the persons (personal jurisdiction)'
28           implicating [the court's adjudicatory] authority." *Reed Elsevier* [*Inc., v.*

- 11 -

*Muchnick*], [599 U.S. 154, 160-61,] 130 S.Ct.[1237] at 1243 [(2010)] (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)). The Court confessed that "[w]hile perhaps clear in theory, the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice," that we should "us[e] the term 'jurisdictional' only when it is apposite," and that we should "curtail ... 'drive-by jurisdictional rulings.' " *Id.* at 1243–44 (quoting *Steel Co.*, 523 U.S. at 91, 118 S.Ct. 1003); *see also Henderson* [*ex. Rel. Henderson v. Shields*], 131 S.Ct.[1197] at 1202–07 [(2011)] (holding that a veteran's failure to file a notice of appeal within the required 120–day period did not deprive the Court of Veterans Appeals of jurisdiction over his claim); *Reed Elsevier*, 130 S.Ct. at 1249 (holding that a copyright-registration requirement was not jurisdictional); *Union Pac. R.R.*, 130 S.Ct. at 598–99 (holding that a settlement-conference requirement was not jurisdictional); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514–15, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (holding that a Title VII provision exempting employers with fewer than 15 employees was not jurisdictional); *Kontrick*, 540 U.S. at 452–56, 124 S.Ct. 906 (holding that a bankruptcy rule governing timely amendments was not jurisdictional); *United States v. Cotton*, 535 U.S. 625, 630–31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (holding that sentencing in excess of a statutory maximum did not deprive the sentencing court of jurisdiction). *But see Bowles v. Russell*, 551 U.S. 205, 209–10, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (holding that the statutory time for the taking of an appeal from a district court decision is jurisdictional).

*Payne v. Peninsula Sch. Dist.,* 653 F.3d 863, 868 (9th Cir. 2011) (en banc), *overruled in part on other grounds by Albino v. Baca,* 747 F.3d 1162 (9th Cir.2014). *See also Wong v. Beebe,* 732 F.3d 1030 (9th Cir. 2013) (en banc) (holding that statute of limitations of the Federal Torts Claims Act is not jurisdictional and may be equitably tolled), *cert, granted,* __ U.S. __, 134 S.Ct. 2873 (June 24, 2014).[5] Thus, "[t]o ward off profligate use of the term 'jurisdiction', ...[the Court has] adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional." *Sebelius v. Auburn Reg'l. Med. Ctr.,* __ U.S. __, 133 S.Ct. 817, 824 (2013) (quoting *Arbaugh*, 546 U.S. at 516). The Court

---

[5]The Supreme Court has recently granted a petition for writ of certiorari in *Wong*. *Wong*, __ U.S. __, 134 S.Ct. 2873 (June 24, 2014). Until the Supreme Court issues its decision, this Court remains bound by the Ninth Circuit's decision. *See e.g.*, *United States v. Frank*, 956 F.2d 872, 882 (9th Cir.1992) ("In the absence of an intervening Supreme Court decision or an Act of Congress that nullifies Ninth Circuit precedent, we must adhere to the law of the circuit[.]"); *United States v. Post*, 607 F.2d 847, 851 n. 5 (9th Cir.1979) (noting that, although the Supreme Court had granted certiorari in a similar case, the court was bound to follow Ninth Circuit precedent until the Supreme Court ruled otherwise).

1    "inquires whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such

2    a clear statement, we have cautioned, 'courts should treat the restriction as nonjurisdictional

3    in character.'" *Id.* (quoting *Arbaugh,* 546 U. S. at 515–516) (other citations omitted). "This

4    is not to say that Congress must incant magic words in order to speak clearly. We consider

5    'context, including this Court's interpretations of similar provisions in many years past,' as

6    probative of whether Congress intended a particular provision to rank as jurisdictional." *Id.*

7    (quoting *Reed Elsevier,* 559 U.S. at 168)).

8        Generally, district courts have "original jurisdiction" over all civil actions brought by

9    the United States, "[e]xcept as otherwise provided by Act of Congress...." 28 U.S.C. § 1345.

10   With specific regard to forfeitures, district courts have original jurisdiction of actions "for

11   the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise,

12   incurred under any Act of Congress...." 28 U.S.C. § 1355(a). Here, the government alleges

13   the Defendant currency is subject to forfeiture under the Controlled Substances Act, 21

14   U.S.C. § 881(a)(6). "This provision contemplates that such forfeitures may be accomplished

15   through either criminal or civil proceedings." *Wilson,* 699 F.3d at 794 (citing 21 U.S.C.

16   §881(e)(1)). When the government "elects to proceed civilly, the procedural rules provided

17   by 18 U.S.C. §983 govern the proceeding." *Id.*

18       Section 983 is entitled "General rules for civil forfeiture proceedings" and sets out,

19   for example: the timing and manner in which the government must give notice to interested

20   parties; the timing and manner in which a person with an interest in the seized property may

21   file a claim, and the 90-day deadline for the government to file a complaint. Section 983 also

22   contains provisions regarding representation of the claimant, burden of proof, the innocent

23   owner defense, motions to set aside forfeiture, proportionality, civil fines, and restraining or

24   protective orders. This Court agrees with the Fourth Circuit that "[i]n this statutory context,

25   it readily appears that the provisions of §983 are procedural rules for pursuing the forfeiture

26   of seized assets. The subject matter jurisdiction for forfeiture is conferred by 28 U.S.C. §

27   1355(a); the authority to forfeit is provided by 21 U.S.C. § 881(a)(6); and the rules of

28   procedure for pursuing a civil forfeiture are provided by 18 U.S.C. § 983." *Id.* at 795; *see*

1   *also Reed Elsevier,* 559 U.S. at 164 (registration requirement under Copyright Act was not

2   jurisdictional where, *inter alia,* that requirement "is located in a provision 'separate' from

3   those granting federal courts subject-matter jurisdiction over those respective claims").

4        Additionally, the language of §983(a)(3)(A) further supports the conclusion that the

5   statute is not jurisdictional.  Nothing in §983(a)(3)(A) setting out the 90-day deadline for the

6   filing of a complaint speaks to the court's jurisdiction. *See Henderson,* __ U.S. __, 131 S.Ct.

7   at 1204 (statute was not jurisdictional where, *inter alia,* the relevant provision "'does not

8   speak in jurisdictional terms nor refers in any way to the jurisdiction of the...'" court.)

9   (quoting *Zipes,* 455 U.S. at 394).  Although §983(a)(3) employs mandatory language in

10  setting out the deadline requiring that the government "shall file a complaint..." not later than

11  90 days after the filing of the claim, 18 U.S.C. §983(a)(3)(A), "that limitation is imposed *on*

12  *the Executive Branch of government*, not as a condition of the *court's authority.*"  *Wilson,*

13  699 F.3d at 795 (emphasis in original).  Further, the Ninth Circuit has applied equitable

14  tolling even when the statutory language specified that an action would be "forever barred"

15  if not filed within the limitations period.  *See Wong,* 732 F.3d at 1038-39 (holding that

16  despite FTCA provision that an action not filed within the limitations period would be

17  "forever barred", the FTCA "does not contain such unusually emphatic language that we may

18  infer congressional intent to limit the adjudicatory authority of the federal courts from that

19  language") (citing *Mt. Hood Stages, Inc. v. Greyhound Corp.,* 616 F.2d 394, 396-407 (9th Cir.

20  1980) (Clayton Act); *Partlow v. Jewish Orphans' Home of Southern Calif.,* 645 F.2d 757,

21  760-61 (9th Cir. 1981), *abrogated on other grounds by Hoffman-La Roche, Inc. v. Sperling,*

22  493 U.S. 165, (1989)).

23       Section 983(a)(3)(A) is clear that the government's failure to file a complaint during

24  the 90-day deadline does not completely bar the government from forfeiture.  Instead, the

25  statute requires the government to "return the property *pending the filing of a complaint*...."

26  18 U.S.C. §983(a)(3)(A).  However, if the government does not file a complaint within 90

27  days of the filing of a claim and does not return the property within that time, then the

28  government "shall promptly release the property...and may not take any further action to

1    effect the civil forfeiture of such property...."  18 U.S.C. §983(a)(3)(B).  "While Congress

2    undertook to provide a sanction for the failure to comply with its terms, in doing so, it did

3    not provide or suggest that the court loses subject matter jurisdiction as a result of

4    noncompliance."   *Wilson,* 699 F.3d at 795.  Moreover, §983(a)(3)(A) also permits the

5    government to obtain an extension of the 90-day deadline upon a showing of good cause or

6    with agreement of the parties.  18 U.S.C. §983(a)(3)(A).  The *Wilson* court persuasively

7    found the ability to seek an extension of the deadline "undercut[] any argument that the

8    deadline is jurisdictional. Congress does not typically allow an agreement of the parties to

9    define the scope of the district court's authority to hear a case."  *Wilson,* 699 F.3d at 795.  In

10   sum, nothing about the language in §983(a)(3)(A) expresses "an inflexible rule requiring

11   dismissal whenever its clock has run."   *Holland v. Florida,* 560 U.S. 631, 634 (2010)

12   (internal quotation marks and citation omitted).

13          Nor does the legislative history suggest that §983(a)(3)(A) is jurisdictional.  CAFRA

14   enacted the deadline to address the perception that there was some inequity in imposing

15   deadlines on claimants, while no similar deadlines or sanctions were imposed on the

16   government. However, while CAFRA imposes a deadline and sanction, there is no language

17   suggesting that the deadline is jurisdictional.

18          Further, there is no showing on this record that would support inferring "Congress'

19   intent...from the existence of a 'long line' of Supreme Court decisions 'left undisturbed by

20   Congress' that 'treated a similar requirement as 'jurisdictional.'"  *Wilson,* 699 F.3d at 795-96

21   (quoting *Henderson,* __ U.S. __, 131 S.Ct. at 1203); *compare Bowles,* 551 U.S. at 206

22   (provision was jurisdictional where, *inter alia,* the Court had "long and repeatedly held that

23   the time limits for filing a notice of appeal are jurisdictional in nature.").  Here, there is no

24   line of Supreme Court decisions with regard to §983(a)(3)(A), nor have the parties cited to

25   any Supreme Court decisions addressing a similar statute.  *See Wilson,* 699 F.3d at 796

26   (finding "no similar line of precedents with respect to §983(a)(3).").

27          At bottom, there is no clear language suggesting that §983(a)(3)(A) is jurisdictional.

28   Nor do contextual considerations support the conclusion that the statute is jurisdictional.

1    However, determination that §983(a)(3)(A) is nonjurisdictional does not end the

2    analysis as to whether the statute is subject to equitable tolling. Although "a nonjurisdictional

3    federal statute of limitations is normally subject to a 'rebuttable presumption' in favor 'of

4    equitable tolling.'" *Holland,* 560 U.S. at 645-46 (quoting *Irwin v. Department of Veterans*

5    *Affairs,* 498 U.S. 89, 95-96 (1990) and citing *Young v. United States*, 535 U.S. 43, 49

6    (2002)), the presumption may be rebutted by showing that there is "'good reason to believe

7    that Congress did *not* want the equitable tolling doctrine to apply.'" *Socop-Gonzalez v.*

8    *Immigration and Naturalization Service,* 272 F.3d 1176, 1188  (9th Cir. 2001) (quoting

9    *United States v. Brockamp,* 519 U.S. 347, 350 (1997)) (emphasis in original).

10    The Supreme Court has determined equitable tolling is available where the statute at

11    issue does not already afford a generously long limitations period, "does not contain

12    language that is 'unusually emphatic,'...does [not]...'re-iterat[e]' its time limitation[,]...and

13    application of equitable tolling... [would not] affect the 'substance' of a petitioner's claim."

14    *Holland,* 560 U.S. at 648 (distinguishing cases holding that equitable tolling was not

15    available to various statutes at issue).  Prior to CAFRA, there was no deadline for the

16    government to file a complaint for judicial forfeiture.  Through enactment of CAFRA,

17    Congress imposed the 90-day filing deadline to address the pre-CAFRA perception that

18    forfeiture proceedings favored the government. *See* Cassella, at p. 125.  Although forfeitures

19    are disfavored, Congress did not expressly state that the 90-day period was not subject to

20    equitable tolling.  Instead, the same provision that sets out the 90-day deadline also permits

21    the court to extend that deadline upon a showing of good cause,18 U.S.C. §983(a)(3)(A),

22    which supports the conclusion that the 90-day deadline is subject to some flexibility.

23    "The Supreme Court has only found the *Irwin* presumption overcome when dealing

24    with statutes containing 'detail[ed] ... technical language' and 'explicit list[s] of exceptions,'

25    *Brockamp,* 519 U.S. at 352, 117 S.Ct. 849 [(tax code)]; circumstances where equitable tolling

26    'could create serious administrative problems,' *id.*;  areas of law where the running of a

27    defined statute of limitations is of "special importance," [*United States*] *v. Beggerly* , 524

28    U.S. [38] at 49, 118 S.Ct. 1862 [(1998) (providing for a 12-year statute of limitations)]; or

1  statutes the Court previously interpreted as jurisdictional in nature, *see John R. Sand &*
2  *Gravel Co. v. United States*, 552 U.S. 130, 128 S.Ct. 750, 755, 169 L.Ed.2d 591 (2008)."
3  *Rouse v. United States Dep't. of State,* 567 F.3d 408, 417 (9th Cir. 2009).   Section
4  983(a)(3)(A) is not at all similar to the statutes in *Brockamp* and *Beggerly,* and permitting
5  equitable tolling would not change the substance of the government's claim.   *See e.g.*
6  *Holland,* 560 U.S. at 657 (applying equitable tolling where the statute at issue "differ[ed]
7  significantly from the statutes at issue in..." *Brockamp,* and *Beggerly*).   Consequently, the
8  doctrine of equitable tolling applies to §983(a)(3)(A).

9  Here, the government bears the burden of showing that equitable tolling should apply.
10  *Espinoza–Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir.2005). A party is entitled
11  to equitable tolling where "he shows '(1) that he has been pursuing his rights diligently, and
12  (2) that some extraordinary circumstance stood in his way' and prevented the timely filing."
13  *Holland,* 560 U.S. at 649 (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)).
14  Equitable tolling is not warranted by "a garden variety claim of excusable neglect,"...such
15  as a simple "miscalculation that leads a lawyer to miss a filing deadline."   *Id.* (internal
16  quotation marks and citation omitted).

17  To support equitable tolling here, the government cites *$39,480.00 in U.S. Currency*,
18  190 F.Supp.2d at 932-33, where an incorrect date-stamp on the claim resulted in the
19  government filing the complaint one day late.  In tolling the 90-day deadline, the court found
20  the government "acted diligently and in good faith in prosecuting the instant case.... If...the
21  date-stamp...had been correct, the Government would have been in full compliance with the
22  ninety-day limitations period.   Instead, the Government's good faith reliance on the
23  [mistaken]...date-stamp caused it to miss the filing by one day." *$39,480.00 in U.S. Currency,*
24  190 F.Supp. 2d at 932.  Further, the delay did not prejudice the claimant who did not "assert
25  she is under any specific hardship because of the seizure of the money, and an additional day
26  is so inconsequential that it could not significantly exacerbate any difficulty." *Id.* at 923-33.
27  Additionally, the claimant did not show the merits of her claim were compromised, and
28  "[s]he will still have her day in court." *Id.* at 933.

Similarly, when the District Court for the District of Maryland rejected the government's contention that the 90-day deadline commenced based on the date the claim reached the "appropriate official" instead of the date the claim reached the agency, the court also relied on the factors set out in *$39,480.00 in U.S. Currency* when ordering further briefing on the issue of equitable tolling: "Equitable tolling here requires the Court to weigh the prejudice caused to [claimants] by tolling the deadline against the prejudice caused to the Government by requiring strict construction of §983." *Beck,* 2011 WL 862952 at * 5.  The court went on to note that although the claimants may experience significant delay, they "would still [be] afford[ed] the opportunity to dispute merits of the seizure after the Government files its complaint....The Court notes that there is a 'strong preference for resolving disputes on the merits when possible, instead of determining the outcome solely on technical or procedural grounds." *Id.* (citing *$39,480.00 in U.S. Currency,* 190 F.Supp.2d 929, 933 (W.D. Tex. 2002)).  "The Court must also consider whether the Government acted in good faith...." *Id.*   Likewise, the District Court for the Southern District of Ohio applied the test set out in *$39,480.00 in U.S. Currency* to equitably toll the 90-day deadline when the government's complaint was untimely because the government had mistakenly rejected the claimant's claim.  *United States v. Thirty-Four Thousand Nine Hundred Twenty-Nine Dollars and 00/100 Dollars ($34,929.00) in United States Currency,* 2010 WL 481250 (S.D. Ohio Feb. 5, 2010) (citing *United States v. $114,143.00 in United States Currency,* 609 F.Supp. 2d 1321 (S.D. Fla. 2009)).

The Ninth Circuit has made clear "that the purpose of the equitable tolling doctrine 'is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.'  Equitable tolling also serves to 'prevent the unjust technical forfeiture of causes of action.'" *Harris v. Carter,* 515 F.3d 1051, 1055 (9th Cir. 2008) (quoting *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir.2004)). Here, there is a lack of clear, consistent, and binding authority as to when the 90-day period to file a complaint commences. *See e.g. Dempsey v. Pacific Bell Co.,* 789 F.2d 1451, 1453 (9th Cir. 1986) (considering lack of clear precedent as factor in equitable tolling analysis).  The government

1   has cited cases supporting the conclusion that the §983(a)(3)(A)'s 90-day period begins when

2   the claim is received by the Forfeiture Paralegal Specialist.  (*See* Response, pp. 2-3 (citing

3   *$7,696.00 in U.S. Currency,* 2013 WL 1827668 at *4; *United States v. Eight Hundred*

4   *Thousand Twenty-Seven Dollars and Seventy Cents,* 2005 WL 6967051 (D.D.C. Mar. 30,

5   2005); *United States v. GMC Yukon Denali,* CV 03-6890 -JCL (CDC Dec. 4, 2003 Order)).

6    Had this Court adopted the government's position over the Osbornes' argument, then the

7   Complaint in this matter would have been timely.  In light of the unsettled law on this issue,

8   this case does not involve garden variety neglect or mere negligent miscalculation.  Instead,

9   the record supports the conclusion that the government diligently calculated the statutory

10   deadline for filing relying on the date-stamp of July 11, 2013.  The government did so based

11   on its interpretation and reliance on the pertinent statutory provisions and regulations.

12   Moreover, case law exists to support the government's interpretation.   Given the

13   government's diligence and the extraordinary circumstance of the unsettled law on this issue,

14   the Court concludes that the government is entitled to equitable tolling.   Nor have the

15   Osbornes shown that the one-day delay is significant or prejudicial.  Tolling the deadline still

16   affords Claimants the opportunity to dispute the merits of the seizure.  "In contrast to the lack

17   of prejudice to the claimants, dismissal of the Government's complaint would have a

18   draconian effect on the Government's case.  Granting the Motion to Dismiss would force the

19   Government to  release the Respondent Property and bar it from any further action to effect

20   the civil forfeiture of that property."  *$39,480.00 in U.S. Currency,* 190 F.Supp. 2d at 932

21   (citing 18 U.S.C. §983(a)(3)(B)).  Such a result is especially harsh in light of the minimal

22   delay and the government's diligent attempt to file the complaint within what it deemed to

23   be the statutory period.  Concluding otherwise overlooks the "strong preference for resolving

24   disputes on the merits when possible, instead of determining the outcome solely on technical

25   or procedural grounds."  *Id.*; *cf. Harris,* 515 F.3d at 1055.

26          The Osbornes point out that the government did not have to wait to file the Complaint

27   until what it thought was the last day.  (Reply, p.7).  Regardless, had the this Court adopted

28   the government's position, the Complaint would have been timely.  In a further attempt to

1   show the government did not act in good faith, the Osbornes point out that although the

2   Complaint was filed with the Court on October 9, 2013, it was not served until January 13,

3   2014. (Motion, p.5). The Osbornes also assert that the government did not serve them with

4   magistrate judge election form in a timely manner.  The government correctly points out that

5   service was timely made within the 120 days allowed under Rule 4 of the Federal Rules of

6   Civil Procedure.  The government further states that the magistrate judge election form is not

7   due until 14 days after entry of counsel's appearance, and the government served the form

8   at the time it served the Complaint.  The Osbornes have not argued that the Complaint was

9   untimely served under the Rules.  Moreover, the issue of service of the election forms is a

10  collateral matter that has no bearing on the instant analysis.

11  **CONCLUSION**

12          For the foregoing reasons, the Complaint in this matter is untimely filed by one day.

13  However, the doctrine of equitable tolling properly applies to excuse the late filing.

14  Accordingly,

15          IT IS ORDERED that Claimants' Motion to Dismiss (Doc. 9), converted to a Motion

16  for Summary Judgment, is DENIED.

17          IT IS FURTHER ORDERED that this matter is SET for a status conference on

18  **WEDNESDAY, OCTOBER 22, 2014 AT 9:45 A.M.**  If counsel wish to appear telephonically,

19  counsel should contact the undersigned's law clerk no later than 4:00 p.m. on October 21,

20  2014, with the number where counsel may be reached.

21          DATED this 25th day of September, 2014.

22

23

24  **CHARLES R. PYLE**
    **UNITED STATES MAGISTRATE JUDGE**

25

26

27

28